# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| THE MEDICAL PROTECTIVE COMPANY, | CASE NO. 09CV2833 DMS (CAB) |
|---|---|
| Plaintiff, | **ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| vs. | |
| SHERVIN ERFANI, DMD, | |
| Defendant. | |

In this action by an insurance company for rescission of a professional liability policy, Plaintiff The Medical Protective Company ("MPC") filed a motion for summary judgment. The insured, Defendant Shervin Erfani, DMD, proceeding *pro se*, did not file an opposition. American Insurance Company ("American"), which is seeking equitable contribution from MPC in a related case, filed an *amicus curiae* brief in opposition to MPC's summary judgment motion, together with a request that the court consider it. MPC filed an objection to the court's consideration of American's *amicus* brief and has not filed a reply in support of its motion. The motion is currently set for hearing on Friday, September 9, 2011. The matter is suitable for submission without oral argument pursuant to Local Civil Rule 7.1(d)(1).

The court has jurisdiction over this action based on diversity pursuant to 28 U.S.C. Section 1332(a). For the reasons which follow, MPC's motion for summary judgment is **DENIED**. American's request for consideration of its *amicus* brief is also **DENIED**; however, in ruling on

/ / / / /

MPC's motion, the court considered the briefing on American's summary judgment motion filed in the related case.

MPC issued professional liability policies to Dr. Erfani, a dentist, for policy periods November 15, 2006 to November 15, 2007 and November 15, 2007 to November 15, 2008. Dr. Erfani did not renew the last policy, and it lapsed effective November 15, 2008. The policies covered claims arising and known to the insured during the policy period, provided the claim was reported to MPC during that time or no later than 30 days thereafter. If the policy was cancelled or not renewed, MPC was obligated to offer an extension contract:

> In the event of either nonrenewal or cancellation of this contract by either party, . . . the Company guarantees to offer, subject to its then current rules, rates, forms and procedures, and through its normal billing and premium collection procedures, an "extension contract." This contract shall extend the time that claims, which would otherwise be covered, may be filed and reported to the Company. . . . The Insured may accept the Company's offer of this "extension contract" by payment of the proper premium within 30 days of such billing. Lack of payment within the specified 30 day period will be deemed a rejection of such offer.

(Rev. Decl. of Marc Fireoved ("Fireoved Decl."), Exh. A.) On December 15, 2008, MPC sent the offer to Dr. Erfani by certified mail, but the letter was returned as unclaimed. (Further Decl. of Andrew P. Rush, filed in related case, *Am. Ins. Co. v. The Med. Protective Co.*, U.S. Dist. Ct., S. Dist. of Cal. case no. 11cv105-DMS(CAB) ("Rush Decl.") Exh. 8 & 9.)

On January 6, 2009, Dr. Erfani's insurance broker submitted a Confirmation Request for Coverage Reinstatement to MPC, requesting to reinstate the lapsed policy. The document was a form, requiring Dr. Erfani to answer a number of questions, including, whether he had any medical condition that "impairs or could impair" his ability to practice. (Fireoved Decl. Exh. D.) In response, Dr. Erfani disclosed that he was having health problems which did not allow him to practice much, that he was doing some work for his existing patients and was not taking any new ones. (*Id*.) Another question was, "Since the expiration [d]ate of your Policy with Medical Protective: [¶] Are you now or have you been involved, directly or indirectly in a claim, potential claim, or suit arising out of the rendering or failing to render professional services?" Dr. Erfani answered this question in the negative. (*Id*.)

On February 12, 2009, Dr. Erfani's broker informed MPC he was unable to obtain a letter from Dr. Erfani's treating physician to satisfy MPC's underwriting requirements. He stated that if MPC

declined to reinstate the policy, Dr. Erfani would purchase the extension contract instead. (Fireoved Decl. at 5.) On February 14, 2009, MPC's underwriter declined Dr. Erfani's request for reinstatement. According to MPC, in reliance on Dr. Erfani's representation in the reinstatement request that he was unaware of any potential professional liability claims against him, the time to purchase an extension contract was extended to allow him to purchase it more than 30 days after MPC's December 15, 2008 offer. (*See id*.) Dr. Erfani then timely paid the premium for the extension contract. (*Id*.)

Subsequently MPC became aware that on January 2, 2009 Dr. Erfani had been served with a lawsuit filed by one of his patients alleging fraudulent billing practices and negligent performance of professional services. (First Am. Compl. Exh. F (*Gleason v. Erfani*, San Diego County Super. Ct. case no. 37-2008-99317-CU-BT-CTL, filed Dec. 31, 2008).) The complaint also referenced an accusation against Dr. Erfani filed by the Dental Board of California for negligent treatment and fraudulent billing.

On December 17, 2009, MPC filed this action to rescind Dr. Erfani's extension contract. On January 19, 2011, American filed a complaint against MPC for equitable contribution and indemnification. American had issued a professional liability policy to Dr. Erfani for the period January 16, 2006 to January 16, 2007. In addition to *Gleason v. Erfani*, several other lawsuits had been filed against Dr. Erfani. He allegedly demanded American and MPC to defend him. Although MPC initially participated in Dr. Erfani's defense, it stopped participating in May 2011. American claims MPC has a duty to contribute to Dr. Erfani's defense and the settlement or judgment of the lawsuits, and should reimburse American for taking on more than its share of these expenses.

MPC filed a motion for summary judgment on its rescission claim against Dr. Erfani, arguing that it is entitled to rescission based on Dr. Erfani's misrepresentation regarding claims or lawsuits. Rule 56 of Federal Rules of Civil Procedure empowers the Court to enter summary judgment on factually unsupported claims or defenses, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c).

The moving party's burden on summary judgment depends on whether it bears the burden of proof at trial with respect to the claim or defense at issue. When, as here, "the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

Only if the movant meets its burden on summary judgment, the burden shifts to the nonmovant to show summary adjudication is not appropriate. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970); *Celotex*, 477 U.S. at 317, 324. In this regard, the nonmovant must "go beyond the pleadings" and rely on "evidentiary materials" such as his "own affidavits, or . . . the depositions, answers to interrogatories, and admissions on file" to designate specific facts in opposition to the summary judgment motion. *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). These evidentiary materials must show that genuine factual issues remain which "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The nonmovant does not meet this burden by showing "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When ruling on a summary judgment motion, the nonmovant's evidence is to be believed, and all justifiable inferences are to be drawn in his or its favor. *Anderson*, 477 U.S. at 255. Determinations regarding credibility, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and are not appropriate for resolution by the court on a summary judgment motion. *Id.*

California substantive law applies to MPC's rescission claim in this diversity action. *See Intri-Plex Technol., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) & *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). MPC argues that it is entitled to rescission because Dr. Erfani failed to disclose a pending lawsuit. California Insurance Code governs rescission of insurance policies.

"Each party to a contract of insurance shall communicate to the other, in good faith, all facts within his knowledge which are or which he believes to be material to the contract and as to which he makes no warranty, and which the other has not the means of ascertaining." Cal. Ins. Code § 332. The insurer may rescind the policy if the insured failed to make the requisite disclosures, whether intentionally or not, or if he made false statements. *Id*. §§ 330, 331; *see also* § 359. In this regard, "[m]ateriality is to be determined not by the event, but solely by the probable and reasonable influence of the facts upon the party to whom the communication is due, in forming his estimate of the disadvantages of the proposed contract, or in making his inquiries." *Id*. § 334; *see also id.* § 360. "The fact that the insurer has demanded answers to specific questions in an application for insurance is in itself usually sufficient to establish materiality as a matter of law." *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 179 (1988), quoting *Thompson v. Occidental Life Ins. Co.*, 9 Cal.3d 904, 915-16 (1973). On the other hand, a mere incorrect answer on an insurance application will not give rise to a defense of fraud, "where the true facts, if known, would not have made the contract less desirable to the insurer. Moreover, the trier of fact is not required to believe the 'post mortem' testimony of an insurer's agents that insurance would have been refused had the true facts been disclosed." *Sogomonian*, 198 Cal. App. 3d at 181.

Dr. Erfani represented he was not involved in a claim, potential claim or a lawsuit. (Fireoved Decl. Exh. D.) This representation was untrue. On January 2, 2009, Dr. Erfani had been served with a lawsuit alleging fraudulent billing practices and professional negligence. (First Am. Compl. Exh. F (*Gleason v. Erfani*).) Although it is not clear whether Dr. Erfani himself was personally served or the complaint was left with a person authorized to receive service for him (*see id*. Exh. G), the complaint references an accusation filed against Dr. Erfani by the Dental Board of California in January 2008. It is therefore highly unlikely that he was unaware of any claims against him arising from his professional services. MPC's evidence therefore supports a reasonable inference that Dr. Erfani knew his statement was untrue when he made it. No evidence has been offered to the contrary.

However, to warrant rescission, Dr. Erfani's misrepresentation must be material to MPC's extension contract offer. *See* Cal. Ins. Code §§ 334, 360. In his request for policy reinstatement, he was expressly asked whether he was or had been "involved, directly or indirectly in a claim, potential

claim, or suit arising out of the rendering or failing to render professional services?" (Fireoved Decl. Exh. D.) In the request he signed on January 5, 2009, he responded in the negative. (*Id.*) Had MPC reinstated the policy pursuant the request, his misrepresentation would have been material as a matter of law. *See Sogomonian*, 198 Cal. App. 3d at 179. However, MPC declined that request and offered an extension contract instead. According to the policy, MPC "guarantee[d] to offer" the extension contract, and the insured could accept the offer "by payment of the proper premium within 30 days of such billing." (Fireoved Decl. Exh. A.) No applications or representations were necessary and all that was required from Dr. Erfani to accept the offer was to pay the premium. (*See id.*, *see also* Rush Decl. Exh. 8 (extension contract offer dated Dec. 15, 2008) & 10 (extension contract offer dated Feb. 17, 2009)). Based on undisputed evidence consisting of the policy and MPC's own offer letter, Dr. Erfani's misrepresentation could not have been material to MPC's issuance of the extension contract. Because MPC has not met its burden as the moving party on summary judgment, *see C.A.R. Transp. Brokerage Co.*, 213 F.3d at 480, it is not entitled to summary judgment based on rescission of the extension contract.

In support of its summary judgment motion, MPC filed a declaration of its Underwriting Manager Marc Fireoved, stating MPC extended Dr. Erfani's time to purchase an extension contract in reliance on his misrepresentation in the request for reinstatement. (Fireoved Decl. at 5.) He further asserted that he would not have authorized the extension of time had he been aware of *Gleason v. Erfani*, because the nature of the lawsuit raised the level of risk that would have been unacceptable to MPC. (*Id.* at 6.) MPC's argument in this regard is based on the implied premise that it made the offer of the extension contract to Dr. Erfani on December 15, 2008, Dr. Erfani did not timely pay the premium and therefore rejected the offer (Fireoved Decl. at 4 (stating without elaborating, "Dr. Erfani . . . failed to timely purchase a 'Contract Extension' Endorsement") & Exh. A ("Lack of payment within the specified 30 day period will be deemed a rejection of such offer.")), but changed his mind about it in February 2009. MPC then granted Dr. Erfani an extension of time to accept the extension contract, which was something it was not obligated to do under the policy, and in granting the extension of time, MPC relied on Dr. Erfani's misrepresentation to its detriment.

/ / / / /

1    The extension of time premise is negated by documents MPC produced in discovery in the related case and which American filed in support of its summary judgment motion in that case. As obligated under the policy, on December 15, 2008, MPC sent the extension contract offer to Dr. Erfani to his business address listed in the policy. (Rush Decl. Exh. 8.) The certified letter was returned as unclaimed. (*Id*. Exh. 9.) It includes a notation with Dr. Erfani's home address; however, it does not appear that MPC attempted to resend the offer to that address. (*See id*.) Accordingly, the offer MPC sent to Dr. Erfani on February 17, 2009 in response to Dr. Erfani's broker's inquiry was the first offer MPC made that Dr. Erfani received. Dr. Erfani therefore had 30 days to accept or reject this offer as provided in the policy, and no extension of time from MPC was necessary. The premise that MPC granted Dr. Erfani an extension of time to accept its offer of extension contract is therefore rejected. Accordingly, MPC cannot maintain that it detrimentally relied on Dr. Erfani's misrepresentation when it made the February 17, 2009 offer.

In the alternative, MPC contends that it is entitled to rescission under the Representation Endorsement to the policy, which provides in pertinent part:

> By acceptance of this policy, the Insured agrees the statements in any application (new or renewal) submitted to the Company are true and correct. . . . [T]o the extent permitted by law, the Company reserves the right to rescind this policy, or any coverage provided herein, for any material misrepresentation made by the Insured. . . . [¶] [T]he statements made in the Insured's application are incorporated into, and shall form a part of, this policy. Therefore, this policy, any endorsements attached thereto, and the applications embody all agreements between the Insured and the Company . . . relating to the insurance.

(Fireoved Decl. Exh. C.) This endorsement does not support MPC's position. On its face, it applies to representations made in a policy application. MPC does not contend that Dr. Erfani made any misrepresentations in his policy application. His Erfani's misrepresentations were made in his request for policy reinstatement, which was declined by MPC. Furthermore, the Representation Endorsement reserves MPC's right to rescind "to the extent permitted by law." Rescission is not warranted for the reasons discussed above pursuant to the applicable provisions of the California Insurance Code, *i.e.*, the misrepresentation was not material and MPC cannot claim to have relied on it to its detriment, because it was obligated to offer the extension contract to Dr. Erfani without any representations on his part.

1         Based on the foregoing, MPC has not met its burden as the moving party seeking summary judgment. Its motion for summary judgment is therefore **DENIED**.

**IT IS SO ORDERED.**

DATED: September 8, 2011

                                HON. DANA M. SABRAW
                                United States District Judge